# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| DOUGLAS LEATHEM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 3:07-CV-220 PPS |
| CITY OF LAPORTE, et al., | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

In January 2003, Plaintiff Douglas Leathem was arrested and charged with child solicitation and possession of child pornography. The solicitation charge was eventually dismissed for lack of evidence, and Leathem entered a diversion agreement to resolve the other charge. Leathem then filed this action against the City of LaPorte, the LaPorte City Police Department, and several of its officers and employees on the grounds that they fabricated the case against him and deliberately destroyed electronic evidence. Defendants have moved for summary judgment. (DE 113.) Defendant Todd McCoy, a LaPorte County computer forensics examiner, has moved for summary judgment separately. (DE 133.) For the following reasons, summary judgment is granted on all claims.

## I. BACKGROUND

In January 2003, Adam Klimczak, a La Porte City Police Detective, was investigating child predators over the internet by posing undercover as a 13 year-old girl and using the screen name "jennaismyname2001." (DE 114-2, Klimczak Aff. ¶¶ 6, 8.) A short while later, Leathem began communicating online with "Jenna." (DE 114-13 at 2, Leathem Dep. at Tr. 69.)[1] Leathem

---

[1] The Parties have filed numerous exhibits for the Court's consideration of these motions. To avoid confusion, I have cited to the document number and page number as the

admits that "Jenna" identified herself early on as 13 years old and that his conversations with "Jenna" were sexually explicit. (*Id.* at 2-6, Tr. 69-70, 84-86.) Klimczak stated that, during their conversations, Leathem sent a photograph of his penis over the internet to "Jenna" and requested "Jenna" to send him pictures of her. (DE 114-2 ¶ 14-15.) Klimczak also claims that Leathem expressed a desire to obtain a pair of "Jenna's" used underwear or a piece of worn clothing with her female scent. (*Id.*) On January 8, 2003, Leathem arranged to pick up a pair of "Jenna's" underwear at an agreed upon hidden location. (*Id.* ¶ 20.) Leathem does not confirm or deny in his briefs that he made this arranged pick-up.

On January 18, 2003, Leathem had arranged to drop off a pornographic magazine and a small toy that he bought for "Jenna" at a public park, but claims he had not yet decided whether to go through with it when he got there. (DE 114-13 at 7, Tr. 89.) When Leathem arrived at the park, he was immediately arrested by Klimczak and other officers. (*Id.* at 8, Tr. 94; DE 60 ¶ 20.) At the police station, Leathem admitted that there might be child pornography on his personal computer. (DE 114-13 at 8-9, Tr. 94-95.) He explained to them that he had a lot of pornography on his computer that the police might interpret a picture as child pornography, whereas Leathem might not. (*Id.* at 9, Tr. 95.) According to Klimczak, Leathem consented to a search and seizure of his home and business computer. (DE 114-2 ¶¶ 35-36.) Klimczak testified that he found several pictures and videos of child pornography on Leathem's computers. (*Id.* ¶¶ 37-38.)

Leathem was initially released and told to return to the police station a few days later. (DE 114-13 at 10, Tr. 103.) When he returned, he was placed in an interrogation room with

---

record appears in the CM/ECF system. Where I have cited to a deposition transcript, I have also included the transcript "Tr." page number.

Klimczak. (*Id.*) Klimczak questioned Leathem about several pictures depicting child pornography on the computer and Leathem denied any knowledge of the pictures. (*Id.*) Leathem contends these pictures were placed on his computer by the Defendants.

On January 23, 2003, Leathem was formally charged with child solicitation and possession of child pornography. (DE 114-14.) Leathem spent about a week in jail before he posted bond on January 31, 2003. (*Id.*) Four months after his arrest, evidentiary problems began to surface. On May 16, 2003, the LaPorte Circuit Court ordered the prosecution to produce copies of the hard drives that were seized from Leathem. (*Id.*) The parties have not supplied court documents or transcripts of proceedings regarding the discovery issues in Leathem's criminal case, but it appears that discovery disputes continued for at least two years. (*Id.*) According to Leathem, the prosecution first produced copies of the hard drives that were unreadable and the second batch contained potentially inauthentic photos and was missing chatroom conversations. (DE 60, Am. Compl. ¶ 23.) Leathem alleges the prosecution then provided a written copy of the hard drive material that was stripped of all dates, times and page numbers and failed to produce other requested material in discovery. (*Id.* ¶ 24.) Defendants deny any allegations that they deliberately withheld or falsified evidence. But they have not affirmed or denied the allegations of their discovery problems.

In November 2004, Leathem moved to dismiss his criminal case for lack of evidence. (DE 114-14.) At the motion hearing, the prosecutor represented that the State had lost all electronic and hard copies of emails sent from Klimczak to Leathem during the sting, was missing a portion of the chatroom conversations between Leathem and "Jenna," and that one of Leathem's hard drives had become unreadable after it had been taken into police custody. (DE

121-3 at 3-12, Hrg. Tr. 3-12.) On January 14, 2005 – almost two years after Leathem was charged – the Circuit Court Judge dismissed the child solicitation charge with only the following explanation: "There is no way that anybody's gonna go to trial without having everything that went on, particularly when it was backed up by paper and computers and everything else, that's inexcusable." (DE 121-4 at 17, Hrg. Tr. 39.) Although the Circuit Court Judge indicated he would explain his decision in a written order, it appears no such order was entered. (*Id.* at 20, Tr. 42; DE 114-14.)

The state court permitted the possession of child pornography charge to proceed. (*Id.*) But the authenticity of the evidence on that charge was called into question too. Leathem contends that the photos of child pornography found on his computer must have been placed there by someone else because all of the child pornography photographic evidence against Leathem had identical origination dates and times. Defendants deny placing these photos on Leathem's computer, but McCoy (the police computer forensic examiner) testified that the computer program used by the police to read the files may have permanently altered the dates and times on those files. (DE 121-3 at 20, Tr. 20.)

On August 4, 2005, Leathem entered into a pretrial diversion agreement with the prosecution to avoid trial on the remaining possession charge. (DE 114-16.) Under the agreement, Leathem agreed to be evaluated for a sex offender program in exchange for a dismissal of the possession charge. (*Id.*) On March 28, 2006, after Leathem's completion of the sex offender program, all remaining charges against Leathem were dismissed with prejudice. (DE 114-13 at 18, Tr. 125; DE 114-14.)

On September 22, 2006, Leathem submitted a letter to the Mayor of the City of LaPorte

and the state risk management commission notifying them of his allegations against the City and its officers, as well as his claimed damages. (DE 114-17.) On May 11, 2007, Leathem filed this action against the City of LaPorte, the LaPorte City Police Department, state prosecutor Jennifer Evans, and the following police officers: Adam Klimczak, former Captain Lynn Cains, Assistant Chief Stan Klimczak, Chief David Gariepy, Captain Clyde Crass, Former Sergeant Mike Dove, Detective Rich Oberle, LaPorte Police Department Network Administrator Charlie Smith, and computer forensics examiner Todd McCoy. (DE 60.) On March 5, 2008, I dismissed Leathem's claims against prosecutor Evans with prejudice. (DE 72.)

## II. DISCUSSION

The Amended Complaint contains seventeen counts, some of which are redundant, that may be summed up as follows: deprivation of federal rights under 42 U.S.C. § 1983; conspiracy and failure to prevent conspiracy to interfere with civil rights under 42 U.S.C. §§ 1985-86; civil damages under the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §1961 *et seq.*; and misprision of a felony under 18 U.S.C. § 4. Leathem has also brought state law claims of false arrest, false imprisonment, intentional infliction of emotional distress, negligence, malicious prosecution and spoliation of evidence. McCoy previously moved for summary judgment and on September 10, 2008, I dismissed all claims against him except Leathem's Section 1983 claim for deprivation of Fourteenth Amendment due process rights. (DE 132.) Defendants move for summary judgment on all claims. McCoy has also moved separately for summary judgment on the remaining Section 1983 claim pending against him.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and affidavits show that there is no genuine issue as to any material fact and that the movant

5

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the nonmoving party. *Doe v. R. R. Donnelly & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The nonmoving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). But a party cannot rest upon mere allegations in the pleadings or conclusory statements in affidavits to survive summary judgment. *Anders v. Waste Mgmt. of Wisc.*, 463 F.3d 670, 675 (7th Cir. 2006). And it must identify evidence with reasonable particularity, *Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 285 (7th Cir. 1997), because it is not the Court's job to "scour the record to locate evidence supporting a party's legal argument," *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

**A.     Section 1983 Claims**

Section 1983 creates a federal cause of action for violations of federal rights under color of state law. 42 U.S.C. § 1983. Leathem alleges the Defendants violated his Fourth, Fifth, Eighth and Fourteenth Amendment rights. His Fifth and Eighth Amendment claims can be easily dispatched because they are inapplicable to the facts of this case. Leathem's allegations only involve local officials, whereas the Fifth Amendment's Due Process Clause only governs federal actors; so his Fifth Amendment claim must fail. *Dusenberry v. United States*, 534 U.S. 161, 167 (2002). And Leathem cannot establish an Eighth Amendment deprivation because he was never convicted of any charges. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003) (holding that the prohibition against cruel and unusual punishment only applies to persons convicted of crimes).

Leathem also runs into problems with his Fourth Amendment claim. He asserts two deprivations of his Fourth Amendment rights - wrongful arrest and malicious prosecution. Leathem's wrongful arrest claim is barred by the statute of limitations. For Section 1983 claims, I must apply Indiana's two-year limitations period for general personal injury claims. *Owens v. Okure*, 488 U.S. 235, 239-250 (1989); *see also* IND. CODE 34-11-2-4. Leathem was arrested on January 18, 2003 – over four years before he filed this lawsuit. He nonetheless argues that his wrongful arrest claim did not accrue until after the subsequent prosecution concluded. It is true that a Section 1983 claim does not accrue while the potential for conviction exists if a plaintiff's success on a Section 1983 claim would undermine the validity of a potential conviction for the underlying charge. *Washington v. Summerville*, 127 F.3d 552, 555-56 (7th Cir. 1997). However, a wrongful arrest claim would not undermine a conviction because a criminal defendant can wage a successful wrongful arrest claim and still have a valid conviction. *Id.* Therefore, Leathem's wrongful arrest claim has expired.

As for his malicious prosecution claim, the Supreme Court recognized in a plurality opinion that such a claim is cognizable under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 270-71, 275 (1994). But the Court never explained the contours of a Fourth Amendment malicious prosecution claim and the circuit courts have developed a range of approaches since. *Wallace v. Kato*, 127 S.Ct. 1091, 1096 n.2 (2007). The Seventh Circuit concluded that "there is no constitutional right not to be prosecuted without probable cause, [therefore] a plaintiff could not state a section 1983 claim simply by showing that he was wrongly prosecuted but rather must establish that he was deprived of a specific constitutional right." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 683 (7th Cir. 2007); *see also Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) ("[I]f a plaintiff can establish a violation of the

fourth (or any other) amendment there is nothing but confusion to be gained by calling the legal theory 'malicious prosecution.'"). Therefore, Leathem's stand-alone claim for malicious prosecution under the Fourth Amendment cannot survive.

Leathem further alleges two Fourteenth Amendment due process violations: first, that the Defendants withheld, lost or destroyed some of the email and chatroom evidence relating to the solicitation charge; and, second that the Defendants fabricated or falsified the photo evidence supporting his possession of child pornography charge. The first allegation is essentially a *Brady* claim. *See Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation occurs when the prosecution fails, either willfully or inadvertently, to disclose evidence materially favorable to the defendant, whether the evidence is exculpatory or tends to impeach a prosecution witness. *See Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006).

In this case, Leathem claims that the prosecution's failure to disclose exculpatory evidence in a timely fashion damaged him by unnecessarily prolonging the proceedings. But this is a curious claim since "[l]ate disclosure does not itself constitute a *Brady* violation." *United States v. Warren*, 454 F.3d 752, 760 (7th Cir. 2006). Instead, a plaintiff must demonstrate, among other things, that "the prosecution fail[ed] to disclose the evidence in time for the defendant to make use of it." *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008). This means that "evidence can be handed over on the eve of trial or even during trial so long as the defendant is able to use it to [his] advantage." *Bielanski v. County of Kane*, 550 F.3d 632, 643 (7th Cir. 2008).

Leathem's case was dismissed in his favor before he could have used the allegedly withheld evidence at trial, so he was not prejudiced by the prosecution's disclosure failures. Far from being prejudiced, the prosecutions sloppy handling of the evidence and its disclosure

failures actually led to the dismissal of the case against Leathem. This does not amount to a viable *Brady* claim. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (where criminal charges were dropped before trial, and thus the underlying criminal proceeding terminated in plaintiff's favor, there was no injury caused by the act of suppressing evidence).

Leathem's second due process claim – fabricating evidence – also falls short. Leathem claims the Defendants placed images of child pornography on his computer and then used those fabricated images to prosecute him for possession of child pornography and to force him to enter a pretrial diversion agreement that included sex offender counseling. The evidence supporting the fabrication claim is dubious at best. Leathem relies primarily on the testimony of Susanne Nicholson, a proposed expert in computer forensics examinations. According to Nicholson, the number of images, the location of the images on Leathem's computer and the identical date/time stamps of the images "all suggest that these images were placed on Mr. Leathem's computer without his knowledge." (DE 121-6 at 9.) But just because a conclusion is "suggested" by a piece of evidence does not make the suggestion fact. It makes it speculative unless the opinion is built on a sturdier foundation. In this case, the foundation for Nicholson's opinions leaves much to be desired. Nicholson drew her conclusions after only reviewing court documents, police reports, and correspondence to and from Leathem. (DE 121-6, Nicholson Interrog. Resp. at 3-7.) She admits she never examined the computer or its hard drive. (*Id.* at 8-9.) And nothing in the record indicates she ever reviewed the photos themselves in electronic or paper format. (*Id.* at 3-9.) Moreover, her reports are void of any methodology or explanation as to how she was able to draw conclusions about the nature and creation of electronic evidence without ever actually seeing the evidence. (DE 114-21, DE 121-6.)

Even if Nicholson could make this deduction without ever seeing the evidence in

9

question, nothing in her report would lead a reasonable juror to believe that any of the Defendants themselves fabricated or placed the photos on Leathem's computer. Recall that Section 1983 provides a civil remedy based only on personal liability. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). So a plaintiff must demonstrate that the defendant participated directly in the alleged constitutional violation. *Id.* In other words, there must be evidence of a causal link between the defendant's conduct and the plaintiff's injury. *Id.* There is simply no evidence in the record that any individual defendant placed these images on Leathem's computer.

Nor can Leathem maintain its claims against the City of LaPorte, its police department or the Defendants in their official capacities. Municipalities cannot be held liable for damages under Section 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may prevail by proving: (a) the existence of an express municipal policy that caused the alleged violation of his rights; (b) that the person who committed the constitutional tort was an official with final policy-making authority; or (c) the existence of a practice or custom so widespread or persistent that it rises to the level of a policy that can fairly be attributed to the municipality. *See Klebanski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Leathem provides no evidence whatsoever on any of these methods, so his Section 1983 claims against the City of LaPorte must be dismissed entirely.

**B. Other Federal Claims**

Leathem's other federal claims are nonstarters. First, Leathem attempts to bring claims under Sections 1985(3) and 1986 by alleging that the Defendants' actions were part of a conspiracy to interfere with his civil rights, and that they failed to prevent such conspiracy.

10

Section 1985(3), however, only applies to deprivations of equal protection or equal privileges and immunities. 42 U.S.C. § 1985(3). Leathem has not alleged any class-based discrimination behind the alleged conspiracy, so he cannot sustain a claim under that statute. *See Grimes v. Breckenridge*, 403 U.S. 88, 102 (1971); *Kyle v. Morton High School*, 144 F.3d 448, 457 (7th Cir. 1998). Leathem's Section 1986 claim also must fail because liability under Section 1986 is predicated upon a Section 1985 offense – which does not exist here. 42 U.S.C. § 1986; *Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir. 1985).

Second, Leathem attempts to bring a civil RICO claim. *See* 18 U.S.C. § 1964(c). Under RICO, it's unlawful to conduct, or conspire to conduct, an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962. According to Leathem, the Defendants engaged in a "pattern of multiple predicate acts perpetrated . . . over a 3 year span." (DE 60 ¶ 8.) But the Seventh Circuit effectively closed the door on RICO claims like the one asserted by Leathem in *Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006). In that case, Gamboa and others were charged with murder. *Id.* at 704. After being acquitted of all charges, Gamboa brought a RICO claim against the police officers who participated in his criminal investigation and prosecution. *Id.* Like the instant case, Gamboa alleged a number of acts of police misconduct over a period of several years including tampering with evidence. *Id.* at 706. The Seventh Circuit upheld the dismissal of Gamboa's RICO claim, finding that Gamboa had not sufficiently alleged a pattern of activity under RICO. *Id.* at 706. The court reasoned that RICO is concerned with "eradicating organized long-term-habitual criminal activity"; whereas Gamboa's allegations only amounted to "a single, non-recurring scheme" with a distinct purpose of framing a handful of individuals for single crime. *Id.* at 705. The court further explained that "an innate part of our legal system is that some criminal defendants are acquitted, and some of those acquitted may

11

have causes of action under state tort law and/or federal civil rights law . . . RICO is not a substitute." *Id.* at 710.

*Gamboa* is essentially indistinguishable from this case. Leathem does not provide any evidence or even allege a pattern of police misconduct beyond the prosecution of his own criminal case. At best, Leathem alleges a single nonrecurring scheme of misconduct orchestrated by a several individuals. Therefore, RICO is not an available cause of action in this case. Third, Leathem cannot maintain his claim under 18 U.S.C. § 4 for failure to report a crime. The statute provides that:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4 (2006). Nothing in the statute grants or implies a private a right of action for the offense. And courts that have considered the issue have found that there is no private right of action that statute. *See e.g. Pankey v. Webster,* 816 F. Supp. 553, 558-59 (W.D. Mo. 1993); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D.N.Y. 1985). I agree with the analysis in these cases so this claim must also be dismissed.

**C.    Indiana State Law Claims**

Leathem asserts several tort claims against the Defendants including false arrest, false imprisonment, intentional infliction of emotional distress, and negligence. Many of these claims are barred by the statute of limitations. The Indiana Tort Claims Act provides that "a claim against a political subdivision is barred unless notice is filed . . . within one hundred eighty (180) days after the loss occurs." IND. CODE 34-13-3-8. The notice requirement also applies to suits against municipal employees. *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996). And

12

in Indiana, tort causes of action "begin[] to run when the plaintiff knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. It is not necessary that the extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Keep v. Noble County Dep't. of Pub. Welfare*, 696 N.E.2d 422, 425 (Ind. Ct. App. 1998) (internal citations and quotations omitted).

Leathem provided notice under the Tort Claims Act on September 22, 2006. (DE 114-17). Therefore, any claims he was aware of before March 26, 2006 (180 days prior to the notice) have expired. This would include his false arrest and false imprisonment claims because he alleges those injuries were sustained in January 2003 – over three years before he submitted his Tort Claims Notice. Meanwhile, Leathem alleges that his claims for intentional infliction of emotional distress and negligence arose from the Defendants' mishandling of evidence in his case. (DE 60 ¶ 70-73, 78-80.) If Leathem believed that the evidence against him was phony all along, then he was aware well before March 26, 2006 (over three years into his criminal proceedings) that he had sustained injuries as a result. Leathem argues that these claims are nonetheless still ripe under the doctrine of continuing wrong because the Defendants continue to deprive him of the evidence in his criminal case. But this doctrine "does not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his cause of action, even if his relationship with the tortfeasor continues beyond that point." *Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. App. Ct. 2008).

In addition, Leathem asserts claims for spoliation of evidence and malicious prosecution. Indiana does not recognize a first-party claim for negligent or intentional spoliation of evidence; so that claim must be dismissed. *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind.

2005). And Leathem's malicious prosecution claim must fail because municipalities and their employees are immune from such suits under Indiana law. IND. CODE 34-13-3-3(6); *see also Livingston v. Consol. City of Indianapolis*, 398 N.E.2d 1302, 1305 (Ind. App. Ct. 1979) ("[T]he legislature fully intended to extend immunity to the State of Indiana and other political subdivisions and their police officers in actions for malicious prosecution.").

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motions for Summary Judgment [DE 113, 133] are **GRANTED**. The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of the Defendants and against Plaintiff Douglas Leathem. Defendants' Motions to Strike [DE 124, 125, 126] are **DENIED AS MOOT**. The Clerk shall further treat this civil action as **TERMINATED**. All further settings in this action are hereby **VACATED**.

**SO ORDERED.**

ENTERED: February 27, 2009.

                                           s/ Philip P. Simon
                                           PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT